UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FRANK M. BARREPSKI, JR. and CARRIE M. BARREPSKI, | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Civil Action No. 11-30160-NMG |
| CAPITAL ONE BANK (U.S.A.) N.A. and EXPERIAN INFORMATION SYSTEMS, INC., | ) ) ) | |
| Defendants | ) ) | |

REPORT AND RECOMMENDATION WITH REGARD
TO CROSS-MOTIONS FOR SUMMARY JUDGMENT
(Document Nos. 60 and 72)
January 24, 2014

NEIMAN, U.S.M.J

Presently before the court are cross-motions for summary judgment filed by

Experian Information Systems, Inc. ("Experian" or "Defendant") and Frank and Carrie

Barrepski (together "Plaintiffs").  The issues contested by the parties are whether

Plaintiffs have established a prima facie case for a violation of the Fair Credit Reporting

Act ("FCRA"), 15 U.S.C. § 1681i, the types of damages available to them, and whether

their cause of action for defamation is preempted.

The motions have been referred to this court for a report and recommendation.

See 28 U.S.C. § 636(b)(1)(B) and FED. R. CIV. P. 72(b).  For the reasons which follow,

the court will recommend that Defendant's motion for summary judgment be allowed

and that Plaintiffs' motion be denied.

I. BACKGROUND

The factual background of this case follows.  In January of 2009, Capital One, a prior defendant in this matter, filed suit against Frank Barrepski in the Small Claims Division of the Springfield District Court to recover $539.16 allegedly owed on a credit card account, to which Plaintiffs filed a counterclaim.  Capital One and Frank Barrepski thereafter agreed to dismiss their claims against each other and filed a Stipulation of Dismissal with Prejudice, whereupon a Judgment of Dismissal was entered on April 22, 2009.  Following that dismissal, Frank Barrepski discovered that the Capital One debt was included in his Experian consumer file.  Five events relevant to the present matter then unfolded, as follows.

1.

First, on June 11, 2009, Frank Barrepski disputed the Capital One account entry on his Experian file by submitting an online form, including this statement:

> DELETE ENTRY IMMEDIATELY.  Case dismissed with prejudice in Small Claims, Docket 200923SC00317.  Clerk phone 413-735-6000.

(Document No. 72, Exhibit I.)  Upon receiving the submission, Experian sent Capital One an Automated Consumer Dispute Verification ("ACDV") form; an ACDV identifies the consumer and asks the creditor to verify and/or amend and/or delete the information reported.  The creditor is to return the ACDV to Experian, providing the consumer's identifying information as contained in the creditor's records and instructing Experian either to leave the item as is, to delete it, or to change it in some specified manner.  Experian then compares the creditor's response to its records.  If the creditor's response is "logical," Experian makes any appropriate updates or deletions, based on

2

the creditor's information and then sends the consumer a summary reflecting the results and the status of the items disputed.

Here, Capital One responded to Experian's ACDV by verifying Frank Barrepski's account and updating certain aspects of it, including the account balance and amount past due, both of which increased by $6.  Experian sent Frank Barrepski the investigation results and a post-investigation disclosure of his consumer file.  On June 15, 2009, Carrie Barrepski called Experian, but the call was disconnected.  Mrs. Barrepski nonetheless claims that she was informed that Experian was bound by the information provided by Capital One.

2.

Second, on July 1, 2009, Plaintiffs again contacted Experian by telephone to dispute the Capital One account entry on Frank Barrepski's credit report.  In response, Experian sent an ACDV to Capital One, with the following statement:

> YOU AGREED TO DELETE THIS ACCOUNT.  WAS TOLD
> BY CAP ONE REP BILL THAT THIS ACCT ENTRY WOULD
> BE DELETED.

(Document No. 72, Exhibit M.)  On July 2, 2009, Capital One responded by verifying the account and updating certain aspects of the account, including the account balance and amount past due, both of which increased by $2.  Experian disclosed these results to Plaintiffs.

3.

Third, on July 16, 2009, Experian was contacted by the Massachusetts Attorney General's Office regarding a consumer complaint filed by Plaintiffs concerning Experian's reporting of the Capital One account.  In response, Experian requested that

the Attorney General's Office send it documentation concerning the complaint. That same day, the Attorney General's Office faxed documentation including the Consumer Complaint, Statement of Small Claim from the Small Claims Action, and the Stipulation of Dismissal with Prejudice as to All Claims and Counterclaims from the Small Claims Action, but not the Judgment of Dismissal in the Small Claims Action. As it concerns the instant dispute, the Judgment of Dismissal stated the following:

> On the above claim, the Court has dismissed this claim pursuant to Uniform Small Claims Rule 7(b) upon plaintiff's unopposed motion or request to dismiss. This means that the defendant(s) does not have to pay the plaintiff(s) any part of the claim or costs in this claim.
>
> Neither the plaintiff(s) nor the defendant(s) has any right of appeal from this judgment of dismissal. Uniform Small Claims Rule 8 provides that for good reason any party may file a motion within one year of this judgment, with notice to the other parties, requesting the Court to vacate this judgment of dismissal.

(Document No. 72, Exhibit E.)

Experian then reinvestigated the dispute with Capital One in two ways. First, on July 16, 2009, Experian sent another ACDV to Capital One, requesting verification of the account status and/or confirmation that the account should be deleted; on July 20, 2009, Capital One responded by verifying the account and updating aspects of the account, including the account balance and amount past due, both of which increased by $1. Second, on July 21, 2009, Experian contacted Capital One by telephone regarding Plaintiffs' dispute; Capital One acknowledged dismissal of the Small Claims Action but verified that the balance on the account as reported by Capital One was still valid, due and owing.

4.

Fourth, on July 21, 2009, Experian considered the matter of the Capital One entry on Frank Barrepski's credit report internally and deleted the entry from his consumer file.  The next day, July 22, 2009, Experian mailed a notification to him that the Capital One entry had been deleted; that entry has not since appeared on his consumer report.

5.

Fifth, on July 16, 2009 (the same day Experian was contacted by the Massachusetts Office of the Attorney General), Plaintiffs applied for a mortgage with United Bank.  On July 20, they received a denial letter, noting the following as the reasons for the denial:

> Delinquent past or present credit obligation;
>
> Garnishment, attachment, foreclosure, repossession, collection action, or judgment;
>
> Other: UNACCEPTABLE SOURCES OF FUNDS FOR CLOSING COSTS AND RESERVES

(Document No. 72, Exhibit G.)  The letter stated further that the denial "was based in whole or in part on information obtained in a report from the consumer reporting agency listed below," identifying LSI Credit Services.  The denial notice did not mention Experian.  Plaintiffs did not reapply for a mortgage with United Bank after the deletion of the Capital One entry from Frank Barrepski's Experian credit report.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36-37 (1st Cir. 1995) (quoting FED. R. CIV. P. 56(c)).  In reviewing a motion for summary judgment, the court "view[s] the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Id.* at 36.  "As a prerequisite to summary judgment, a moving party must demonstrate an absence of evidence to support the non-moving party's case." *Id.* at 37 (quotation omitted).  The burden then "shifts to the non-moving party, who may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." *Id.* (quotation omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It should also be understood that "[c]ross-motions for summary judgment do not alter the basic summary judgment standard, but rather require courts to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Barletta Heavy Division, Inc. v. Travelers Ins. Co.*, 2013 WL 5797612, at *7 (D. Mass. Oct. 25, 2013).  Accordingly, "in deciding cross-motions for summary judgment, courts must consider each motion separately, drawing inferences against each movant in turn." *Id.*

### III. DISCUSSION

Congress enacted the FCRA out of concern over "abuses in the credit reporting industry.  The legislative history of the FCRA reveals that it was crafted to protect consumers from the transmission of inaccurate information about them, and to establish

6

credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted).  Such "consumer oriented objectives support a liberal construction of the FCRA." *Id.*

Under the FCRA, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).  "Once a consumer report exists, [the FCRA] triggers various duties on the part of a reporting agency, including the obligation to reinvestigate when a consumer contends that [her] consumer report is inaccurate or incomplete." *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005) (quotation omitted) (alterations in original).  If a consumer reporting agency negligently violates a duty imposed by the FCRA, actual damages, costs and fees are available.  15 U.S.C. §1681o.  In the case of a willful violation of the statute, punitive damages are also available.  15 U.S.C. § 1681n.

In this case, Plaintiffs contend that Experian failed to reinvestigate an inaccurate entry on Frank Barrepski's credit report in violation of § 1681i, which provides as follows:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5) before the end of the 30-day period beginning on the date on which the

agency receives the notice of the dispute from the consumer
or reseller.

15 U.S.C. § 1681i(a)(1)(A).  To establish a claim under section 1681i, a consumer-

plaintiff must show that (1) the consumer reporting agency's reinvestigation was

unreasonable, (2) the plaintiff "suffered damages as a result of the inaccurate

information," and (3) a causal relationship exists between the unreasonable

reinvestigation and the loss of credit or some other harm.  *Ruffin-Thompkins*, 422 F.3d

at 608 (quotation omitted).

Although the parties vigorously contest whether Plaintiffs have established each

of the elements of their FCRA claim, the court finds, in particular, that Plaintiffs' proof

fails as a matter of law at the third element, *i.e.*, the causal connection between

Experian's reinvestigation and the claimed loss of credit.  Nonetheless, in order to

provide a complete report and recommendation, the court will address the parties'

dispute with regard to all the FCRA elements and then move on to yet other aspects of

their dispute, as follows: (A) whether the Capital One entry was inaccurate, (B) whether

Experian's reinvestigation was reasonable, (C) whether Plaintiffs established a causal

link between the Capital One entry and the harm alleged, and (D) whether Experian's

actions were willful and/or malicious such that punitive damages and a cause of action

for defamation are available.[1]

---

[1]  Plaintiffs also argued in their cross-motion that Experian's motion for summary
judgment should be denied with prejudice for failure to fulfill its discovery obligations.  In
doing so, Plaintiffs incorporate by reference the arguments raised in their July 22, 2013
motion to compel.  (See Document No. 70.)  That motion sought information relating to
employee names and contact information, deviations from normal procedure during the
investigation, and the average amount of time dedicated to investigating disputes.  The
court allowed Plaintiffs' motion in part and required Experian to (1) identify a particular

### A.  Whether the Capital One Entry was Inaccurate

The parties dedicate some time debating whether or not the Capital One entry on Frank Barrepski's credit report was inaccurate with regard to his debt.  The factual issue is important because "[a]ccurate reporting is a complete defense to both a 1681e(b) claim and a 1681i claim."  *Fahey v. Experian Info. Solutions, Inc.*, 571 F. Supp. 2d 1082, 1088 (E.D. Mo. 2008).  In essence, the parties respective arguments turn on whether Plaintiffs' settlement with Capital One in Small Claims Court extinguished the underlying debt.

For its part, Experian relies on *Dawe v. Capital One Bank*, 456 F. Supp. 2d 236 (D. Mass. 2006), where the court found that the defense of a debt's validity was available to Capital One despite the fact that a state court had dismissed its action against Dawe as a discovery sanction; by agreement of the parties, Dawe's counterclaim in the state court action was voluntarily dismissed that same day.  The issue in the later federal action was whether the doctrines of claim and issue preclusion barred Capital One from raising the defense of the debt's validity in response to Dawe's FCRA claim.  *Id.* at 240-41.  The court held that "the state court dismissal -- though it

_____

employee and provide contact information if that person was no longer employed by Experian (acknowledging further that Plaintiffs were free to depose Experian's current employees), and (2) supplement its response to an interrogatory concerning the cost of investigating consumer disputes, the average amount of time for such investigations, and an hourly investigation production average.  The court otherwise denied Plaintiffs' motion, finding that Experian complied with Plaintiffs' other discovery requests.  (See Docket Entry No. 91.)  The court notes that Plaintiffs have not supplemented their summary judgment filings in any way since the court's September 6, 2013 ruling on their motion to compel and, accordingly, sees no need to revisit the issue.

may deprive Capital One of a judicial mechanism for recovering the loan -- does not erase Dawe's underlying indebtedness." *Id.*

For their part, relying on *Diaz v. Resurgent Capital Services, Ltd.*, 2013 WL 22215 (D. Mass. Jan. 2, 2013), Plaintiffs assert that their settlement with Capital One did extinguish the underlying debt.  In *Diaz*, the plaintiff brought claims against debt collectors under both the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(A) and the Massachusetts consumer protection statute, MASS. GEN. LAWS ch. 93A.  The plaintiff alleged that in 2006 a debt collector's complaint against him in state court was settled and dismissed with prejudice when it was shown that the "debt" was the result of identity theft.  Nonetheless, different debt collectors tried to collect the same debt in 2011.  When those subsequent debt collectors moved to dismiss the plaintiff's federal action against them, arguing that as a matter of law the state case did not extinguish the obligation, the court concluded that *Dawe* did not apply.  The court explained:

> According to the entries on the docket submitted by both parties the 2006 state action was not dismissed on procedural grounds, as it was in *Dawe* and the cases it cites, rather it was dismissed because the case was settled.  The plaintiff pleads the case was settled when it was discovered that the debt was the result of identity theft, a claim bolstered by the Affidavit of Fraud Application from the state court case attached to the plaintiff's opposition.  Accordingly, the Complaint sufficiently pleads that the state court case was dismissed and the debt was extinguished through a settlement of the parties. Therefore, any representation by the defendants that a balance remained on the debt would be a false representation in violation of the FDCPA.

*Diaz*, 2013 WL 22215, at *2.  The same reasoning and result, Plaintiffs assert, should apply here.

Plaintiffs, in this court's view, have the better argument.  Unlike the procedural issues which led the *Dawe* court to conclude that the underlying debt had been extinguished, the Stipulation of Dismissal in the instant state-court matter provided that "[t]he parties to the above-entitled action, pursuant to the provision of Rule 41(a)(1)(ii), hereby stipulate that said action be dismissed with prejudice as to all claims and counterclaims."  (Document No. 63, Exhibit B.)  Further, the Judgment of Dismissal stated that "[t]his means that the defendant(s) [*i.e.*, the Barrepskis] do[] not have to pay the plaintiff(s) any part of the claim or costs in this claim."  (Document No. 72, Exhibit E.)  These documents, in this court's view, foreclose summary judgment in favor of Experian on its argument that the debt was accurately reported.  *See also Barrepski v. Capital One Bank*, 439 Fed. Appx. 11, 13 (1st Cir. 2011) ("[The Barrepskis] are NOT contending that [Frank Barrepski's] credit report is inaccurate because he never owed the money in the first place.  Rather, they are arguing that the SETTLEMENT between Capital One and Barrepski -- *i.e.*, the WITH PREJUDICE dismissal of Capital One's earlier action for the collection of the debt -- operated as an adjudication on the merits of Capital One's entitlement to the money and precluded it from continuing to report the $540 in charges as a debt.").

### B.  Whether the Reinvestigation Was Reasonable

Both Experian and Plaintiffs seek summary judgment on the reasonableness of the reinvestigation.  Courts evaluate the reasonableness of a consumer reporting agency's investigation based on "what a reasonably prudent person would do under the circumstances."  *Cousin v. Trans Union Corp.*, 246 F.3d 359, 368 (5th Cir. 2001) (interpreting § 1681e).  As the Seventh Circuit explained:

> Whether the credit reporting agency has a duty to go beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable. The credit reporting agency's duty will also depend on the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer.

*Ruffin-Thompkins*, 422 F.3d at 608 (quoting *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994)); *Richardson v. Fleet Bank of Mass.*, 190 F. Supp. 2d 81, 88 (D. Mass. 2001) (same).  In turn, "[t]he Sixth Circuit has held that where a credit agency knew of a dispute between the consumer and creditors and where the consumer had complained about his consumer report, merely making two telephone calls to the creditors was insufficient to re-verify the information contained in the report." *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986) (citing *Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982)).  Still, in the majority of cases, reasonableness is a jury question. *Richardson*, 190 F. Supp. 2d at 88; *see also Guimond*, 45 F.3d at 1333 (stating in the context of § 1681e, "[t]he reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases"); *Cousin*, 246 F.3d at 368 ("In the majority of cases, reasonableness is a question for the jury.").

Here, Plaintiffs argue that the first online dispute form they submitted -- which stated "DELETE ENTRY IMMEDIATELY.  Case dismissed with prejudice in Small Claims, Docket 200923SC00317.  Clerk phone 413-735-6000" -- put Experian on notice that Capital One was an unreliable and inappropriate source to verify the validity of the debt.  In order for the investigation to approach reasonableness, Plaintiffs maintain, Experian at least had the obligation to call the Small Claims Court clerk to determine the

12

status of that action and, possibly, the debt itself.  For its part, Experian appears to argue that its investigation would not have resulted in any different a conclusion had it contacted the Small Claims Court.

In this court's view, neither side is entitled to summary judgment on the issue of the reasonableness of Experian's investigation.  Granted, the fact that Experian's first investigation consisted of contacting Capital One, even though it was on notice of the prior litigation between Capital One and Plaintiffs, might suggest that it was negligent pursuant to section 1681i.  *See Murphy v. Midland Credit Mgmt.*, 456 F. Supp. 2d 1082, 1091 (E.D. Mo. 2006) (concluding the plaintiff put credit reporting agencies on notice that the creditor may be reporting inaccurate information and that a material factual dispute existed regarding whether further investigation would have made a difference).  Nevertheless, the facts presented in the partes' cross-motions are quite skimpy in this regard and fail to address the universe of actions taken by the parties.  *See Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (stating that the reasonableness of an investigation procedure under section 1681(e) "cannot be resolved on summary judgment unless the reasonableness or unreasonableness of the procedures is beyond question").  And while Plaintiffs also assert that the court should declare that Experian's training manuals demonstrate that its investigation procedures were unreasonable under the FCRA, the court does not agree that those manuals establish that Experian's investigation was unreasonable as a matter of law.  (See Document No. 72, Exhibit H.)  Accordingly, the court concludes that summary judgment on this issue is inappropriate for either side.

### C.  Whether Plaintiffs Established a Causal Link Between Experian's Capital One Entry and the Mortgage Denial Making Associated Actual Damages Available to Them

#### 1. Causation Between the Experian Credit Report and Mortgage Denial

The true focus of Experian's motion for summary judgment is its argument that, as a matter of law, Plaintiffs cannot establish a causal connection between the Capital One entry on Experian's report and the mortgage loan denial by United Bank.  The court agrees.

Under the FCRA, Plaintiffs bear the burden of proving a credit report was a causal factor in their alleged harm.  *Fahey*, 571 F. Supp. 2d at 1089.  "To satisfy this burden," Plaintiffs have "the affirmative duty of presenting evidence supporting [their] claim that Experian's allegedly inaccurate credit report caused [their] harm."  *Id.*  Plaintiffs "cannot obtain an award of 'actual damages' " unless they show "a causal relation between the violation of the statute and the loss of credit, *or some other harm.*"  *Id.* (quotation omitted) (emphasis in original).  Although "FCRA plaintiff[s are] required to show that the erroneous entry was a substantial factor in bringing about the denial of credit, [they are] not required to eliminate the possibility that other factors may have also influenced the credit denial."  *Id.* (quotation omitted).

Experian sets forth two main reasons why Plaintiffs have failed to establish a causal connection between the Capital One entry and the mortgage loan denial.  First and foremost, Plaintiffs have failed to submit admissible evidence demonstrating that an *Experian* credit report supplied the information relied upon by the bank when it denied the mortgage loan application.  As set forth in the facts above, the denial notice did not mention Experian but rather listed "LSI Credit Services" as providing the credit report

information.  While Plaintiffs broadly allege that LSI Credit Services was a "middleman" which conveyed information from Equifax, Experian, and Transunion to banks and others, they cite no supporting evidence.  At most, Plaintiffs aver in parallel affidavits that a bank agent showed them, or informed them that it used, the three-bureau credit report from the above-mentioned entities.[2]  Such hearsay, of course, is inadmissible to defeat summary judgment unless the interested party "can establish that the statements fall outside the definition of hearsay or fit within an exception to the rule."  *Caesar v. Shinseki*, 887 F. Supp. 2d 289, 301 n.10 (D. Mass. 2012) (citing FED. R. CIV. P. 56(c)(2)).  Plaintiffs have failed to do so here.[3]

A similar situation arose in *Murphy v. Midland Credit Management, Inc.*, 456 F. Supp. 2d 1082 (E.D. Mo. 2006).  There, the plaintiff applied for -- and was denied -- a bank loan; the bank sent the plaintiff a letter stating that the denial was based on a *Trans Union credit report* containing multiple negative entries, "including excessive obligations in relation to income, delinquent past or present credit obligations with

---

[2]  Frank Barrepski's affidavit avers that LSI "was merely a middleman that collected a three-bureau credit report on both Plaintiffs and forwarded that to United Bank" and that "United Bank showed the credit report to Carrie and I [sic].  It contained a joint report from all three credit bureaus (Experian, Equifax and Transunion).  Each of those reports contained the false and defamatory Capital One entry."  (Document No. 72, Exhibit B.)  Similarly, Carrie Barrepski's affidavit states that "United Bank showed Frank and I [sic] the credit report that it had obtained.  It was a joint three-bureau report on both of us from all three main credit bureaus of Experian, Transunion and Equifax.  The Capital One entry was on each of those reports."  (Document No. 72, Exhibit C.)

[3]  Of course, it would not have been impossible for Plaintiffs to obtain the necessary linkage to Experian had it existed.  United Bank's denial notice indicated that Plaintiffs could obtain a free copy of the credit report from the consumer credit reporting agency identified in the notice, LSI Credit Services, but Plaintiffs have brought no such information to the court's attention.

others, and garnishment, attachment, foreclosure, repossession, collection action or judgment." *Id.* at 1086 (internal quotation marks omitted).  The plaintiff brought several claims against Experian and Trans Union, including a section 1681i(a) claim.  Experian moved for summary judgment on grounds that the plaintiff failed to put forth evidence showing that the bank relied on an Experian credit report in its denial, pointing to the bank's denial letter identifying Trans Union only.  *Id.* at 1091-92.  The court agreed and entered summary judgment in Experian's favor on the issue of causation for the section 1681i(a) claim.  *Id.* at 1092; *see also Gorman v. Experian Info. Solutions, Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008) (granting summary judgment in favor of defendant-Experian on the issue of causation because the plaintiff failed to take evidence from third-party lenders who allegedly denied the plaintiff credit and did not demonstrate that the lenders relied on an Experian credit report or that the inaccurate information was a substantial factor in the credit lenders' denials); *Valvo v. Trans Union LLC*, 2005 WL 3618272, at *5 (D. R.I. Oct. 27, 2005), *adopted by* 2006 WL 47445 (D. R.I. Jan. 6, 2006) (granting partial summary judgment in favor of the defendant-Trans Union on the issue of causation when the credit denial was based on an Experian report, reasoning that "Trans Union cannot be held liable for damages sustained by Plaintiff as a result of inaccurate information provided by Experian").

Even if the court were to assume for present purposes that the LSI Credit Services report reflected Experian's information -- and that United Bank's denial, as a general matter, could be tied to Experian's July 2, 2009 report -- that report displayed nine other "potentially negative items or items for further review" aside from the Capital One account.  (Document No. 63, Exhibit E.)  That alone would militate against the

Capital One entry being a significant cause of United Bank's loan denial.  As

importantly, Experian's report makes no mention of the Capital One entry being in

"collection"; it merely states the following: "Status: Account charged off.  $528 written

off.  $602 past due as of Jul 2009" and describes the "type" of account as "revolving."

(Id.)  Thus, despite Plaintiffs' argument that the Capital One entry was the only entry

which could possibly relate to a "collection action," the word "collection" is not even

included in that entry.  Granted, a collection "account" may be different from a collection

"action," which signals litigation over a debt.  *Cf.* 15 U.S.C. § 1692a (defining, under the

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, the term "debt" as "any

obligation or alleged obligation of a consumer to pay money arising out of a transaction"

and the term "debt collector" in part as one who "regularly *collects or attempts to collect*

. . . debts owed or due") (emphasis added).  But again, there is no mention of any

"collection" in Experian's Capital One entry.  Finally, and most importantly for present

purposes, two other accounts in Experian's report reflect a "type" of "collection," three

accounts have an actual "status" of "collection," while only two other accounts show a

"status" of "charged off" (similar to the Capital One entry).  (Document No. 63, Exhibit

E.)  In the end, given the full scope of Experian's report and even viewing the particular

facts and inferences to be drawn therefrom in a light most favorable to Plaintiffs, it

cannot be said that the Capital One entry was a "substantial factor" in bringing about the

denial of credit.  *Fahey*, 571 F. Supp. 2d at 1089 ("[W]hile a FCRA plaintiff is required to

show that the erroneous entry was 'a substantial factor in bringing about the denial of

credit,' he is not required to eliminate the possibility that other factors may have also

influenced the credit denial.") (quoting *Philbin v. Trans Union Corp.*, 101 F.3d 957, 969 (3rd Cir. 1996)).

Again, *Murphy* presents similar circumstances and, in turn, guidance here. 456 F. Supp. 2d at 1092. Even though it was uncontested there that the bank based its loan denial on the Trans Union report, Trans Union moved for summary judgment on the issue of causation, arguing that the allegedly inaccurate account was not specifically mentioned in the report and, as importantly, the loan denial was based on multiple factors. The court agreed and granted Trans Union summary judgment on the issue; the court pointed to multiple negative items on the plaintiff's consumer report and the fact that the plaintiff proffered no evidence demonstrating that the contested item on the report "was a substantial factor in the loan denial." *Id.* As a result, the court concluded, the plaintiff "failed to meet her burden on this issue." *Id.* That is the very situation in the case at bar.

One last point: the timing of the events at issue hardly supports Plaintiffs' assertion that the Capital One entry caused the loan denial. As the undisputed facts indicate, Plaintiffs applied for the loan four weeks *after* they brought the Capital One entry to Experian's attention, the loan was denied four days later, and Experian corrected the Capital One entry a mere six days after that -- yet Plaintiffs apparently chose not to reapply for the mortgage loan. It is hard to conceive that Plaintiffs can now claim that the Capital One entry was the primary cause of the denial without having tested that belief by reapplying for the loan.

In sum, given the absence of admissible evidence establishing causation between the Experian credit report and United Bank's mortgage loan denial and,

separately, the inability of Plaintiffs to demonstrate that the Experian report, even if deemed to have been considered by the bank, was a substantial factor in the bank's denial of the loan, the court concludes that summary judgment in favor of Experian is warranted. That conclusion, if adopted, would end Plaintiffs' claims under the FCRA.

### 2. Damages Associated with the Mortgage Denial

Given the court's conclusion that summary judgment should enter in favor of Experian on the issue of causation, Experian, in the court's view, is also entitled to summary judgment on the issue of Plaintiffs' claimed damages (of $156,000 per plaintiff) associated with the mortgage loan denial. "Without a causal relation between a violation of the FCRA and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.' " *Id.* at 1091 (quoting *Crabill*, 259 F.3d at 664). Plaintiffs have not established a causal connection between the Experian report and mortgage denial and, therefore, Experian is entitled to summary judgment on the issue of such damages. *See Murphy*, 456 F. Supp. 2d at 1091-92 (granting defendants Experian and Trans Union summary judgment on the issue of damages associated with the plaintiff's lost credit opportunity because she failed to prove causation between their reports and her loan denial).

Summary judgment in favor of Experian is also warranted for Plaintiffs' alleged emotional distress arising out of the denial of the mortgage loan. The bulk if not the entirety of Plaintiffs' claims for emotional distress damages -- $50,000 for Mr. Barrepski and $75,000 for Mrs. Barrepski -- arise out of United Bank's mortgage denial.[4]

---

[4] Plaintiffs explain as follows:

However, absent a causal relationship between the Experian credit report and the denial of the mortgage loan and, in turn, the emotional distress associated with that denial, Plaintiffs, in the court's view, cannot obtain such damages.  *Id.* at 1091; *see also*

> Carrie Barrepski has multiple disabilities, including legal blindness, hearing loss, cardiac issues and cerebral palsy, which leaves her with less than perfect balance.  She also has osteoporosis.  She had a severe fall in April 2009 that resulted in a broken ankle that required emergency surgery.  Her recovery included eighteen days in the hospital followed by extensive at home therapy and then outpatient therapy.  The doctors stated that they felt a one-story house would be safer for her.  It was this advice that prompted the Barrepskis to seek a mortgage for a specific type of house at the time they did -- it was not done on a lark.  More recently, she suffered another broken ankle in February 2013 just above the original fracture.
>
> This made Carrie feel extremely nervous about being independent in her own house and having fears of becoming an invalid.  She was also concerned about future broken bones, and angry that the Barrepskis were not able to find proper housing.  It caused severe anxiety, loss of sleep and feelings of hopelessness.  Carrie also felt severe embarrassment and humiliation having to explain the situation to the Barrepskis' longtime bank.
>
> Given that he was attempting to follow the doctors' advice and move into a house that would be safer for Carrie, Frank Barrepski experienced extreme anger and outrage.  This was especially so given that there was no indication that either defendant was ever going to delete the false entry at any point in time, causing severe feelings of hopelessness.  Given the agony in her voice when she fell, he was determined to do the best he could not to have that happen again, and it made him feel inadequate for not being able to obtain a safer house for Carrie.  He was not willing to allow either defendant to block his attempt to do so through flagrantly illegal conduct that they had no right to engage in.  This in turn caused anxiety and difficulty sleeping.  It was also extremely embarrassing and humiliating to have to explain this situation to his longtime bank.

(Document No. 72 at 22-23.)

*Cousin*, 246 F.3d at 370 ("In light of the fact that the credit denial occurred due to an Equifax report, [the plaintiff's] emotional distress from the denial of credit cannot be attributed to [the defendant] Trans Union, and he cannot recover actual damages for that distress."). Accordingly, the court will recommend that Experian's motion for summary judgment be allowed in this respect as well.

Of course, if the trial court believes that Plaintiffs should survive summary judgment on the issue of causation, then Plaintiffs could survive summary judgment with regard to all claimed damages associated with the mortgage loan denial. This, in turn, leads to a separate issue with regard to one possible subset of damages, namely, whether Frank Barrepski -- regardless of the outcome of the damages issue associated with the mortgage *denial* -- should survive summary judgment on what might be considered a free-standing claim for emotional distress grounded in Experian's allegedly flawed *investigation*. Thus, Frank Barrepski -- although not Carrie Barrepski -- appears to suggest that he has such a free-standing claim tied to his failed efforts to correct Experian's credit report. *See Murphy*, 456 F. Supp. 2d at 1092 ("Even when there are no out-of-pocket expenses, humiliation and mental distress do constitute recoverable elements of damage under the Act."); *see also Richardson*, 190 F. Supp. 2d at 87 (denying summary judgment on the issue of emotional distress damages where plaintiffs alleged in part that they suffered emotional distress as part of their lengthy efforts to correct their consumer reports). In the court's opinion, however, Frank Barrepski provides no real support for any such freestanding emotional damages claim.

Although the First Circuit has not specifically addressed the level of proof necessary to sustain such a claim, *see Valvo*, 2005 WL 3618272, at *6 (noting that First

21

Circuit has not specifically adopted a rule requiring corroborating observations of injury), the court concludes that Frank Barrepski's claim, if claim it is, is insufficient even under a *de minimus* standard of proof. First, his affidavit focuses almost entirely on distress related to the loan denial. Second, any hint of a freestanding claim of emotional distress in his affidavit regarding Experian's investigation is conclusory at best, falling far short of even the minimal proof necessary to survive summary judgment. *See Bach v. First Union Nat'l Bank*, 149 Fed. Appx. 354, 361 (6th Cir. 2005) (explaining that in the Sixth Circuit, "[a]n injured person's testimony alone may suffice to establish damages for emotional distress provided that she reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements"). And contrary to Frank Barrepski's argument, the testimony he offers here is hardly on a par with the evidence proffered in *Sloane v. Equifax Information Services, LLC*, where the plaintiff offered "an objective and inherently reasonable factual context" for her distress during the twenty-one months that she experienced repeated credit denials and attempted to correct her consumer report, articulated descriptions of her protracted anxiety as detailed though specific events, and corroborated that the distress was evident to others, particularly her husband. 510 F.3d 495, 503 (4th Cir. 2007).

In short, whatever the outcome of Plaintiffs' claims for emotional distress with regard to the mortgage denial, the court will recommend that Experian be granted summary judgment on the possible claim for emotional distress which Frank Barrepski may be asserting based solely on Experian's investigation of his dispute.

### D. Whether Experian's Actions Were Willful or Malicious

#### 1. Punitive Damages

The next issue which needs to be addressed is whether Experian's actions were willful such that punitive damages are available to Plaintiffs under section 1681n of the FCRA. "Section 1681n provides the statutory authority for civil liability for willful noncompliance with the FCRA. . . . Under the willful non-compliance statute, a consumer may obtain punitive damages." *Cousin*, 246 F.3d at 372; 15 U.S.C. § 1681n(a)(2). "Malice or evil motive need not be established for a punitive damages award, but the violation must have been willful." *Cousin*, 246 F.3d at 372 (quotation omitted). The Supreme Court has said that " 'willfully' is a word of many meanings whose construction is often dependent on the context in which it appears." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007) (quotation omitted). "Willful" violations actionable under section 1681n include knowing violations of the act as well as those taken in reckless disregard of the FCRA's requirements. *Id.* Reckless actions carry "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68 (quotation omitted). A defendant may be liable under the FCRA for a reckless violation when the action "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Generally, a willful noncompliance claim may proceed only "where a defendant's conduct involves willful misrepresentations or concealments. In those cases, a consumer reporting agency has typically misrepresented or concealed some or all of a credit report from a consumer." *Cousin*, 246 F.3d at 372 (citation omitted).

In light of the paucity of evidence here, the court concludes that Plaintiffs have failed to demonstrate for summary judgment purposes that punitive damages could be

imposed at trial and, accordingly, will recommend that Experian's motion for summary judgment be granted on this issue.  This is not a close call.  At best, Plaintiffs argue that Experian does not review creditor responses to ACDV forms for accuracy, that none of Experian's investigations, via telephone or ACDV, relied on anything more than the responses of Capital One, which Experian knew or should have known could not be reliable or unbiased given Capital One's interest in obtaining the alleged money due, and that Experian did not internally consider the issue until July 22, presumably as a result of being contacted by the Massachusetts Attorney General's Office.  These arguments, however, speak to the issue of whether the investigation was reasonable and, in any event, are not supported by any evidence that Experian acted knowingly, in conscious or reckless disregard of Plaintiffs' rights or in a way that could be characterized as misrepresenting or concealing information.  Even Plaintiffs' strongest evidence -- that Carrie Barrepski called Experian several times to dispute the Capital One entry on behalf of Frank Barrepski and that during each phone call "the employees agreed the entry was inaccurate and said that the correct entry should be 'settled and dismissed' " -- does not demonstrate that Experian acted "intentionally" with "conscious disregard for the rights of others" or with an unjustifiably high risk of harm, particularly given the fact that a mere six weeks -- encompassing four efforts at investigation -- passed from the time the issue was raised with Experian to the time it eliminated the inaccurate Capital One entry from Frank Barrepski's consumer report.  In addition, there is no evidence proffered by Plaintiffs which suggests that Experian misrepresented information to Plaintiffs or concealed information from them.  The Capital One entry might be deemed inaccurate, if not false, for purposes of summary judgment, but there

is no evidence whatsoever that Experian's actions amount to a willful violation of the FCRA.  *See Richardson*, 190 F. Supp. 2d at 89 (granting summary judgment in favor of Equifax and reasoning that "[t]here is no evidence to support a claim that Equifax willfully misrepresented or concealed any part of a credit report from the plaintiffs. Moreover, the plaintiffs do not allege that Equifax adopted its reinvestigation policies with knowledge, or reckless disregard, as to whether they contravened rights of consumers under the FCRA.  Finally, the plaintiffs' contention that Equifax failed to correct an error in their credit reports after receiving several notices does not constitute evidence of a willful violation."); *see also Valvo*, 2005 WL 3618272, at *8 (granting summary judgment in favor of consumer reporting agency under section 1681n explaining that a "single mistake is insufficient to create a genuine issue of material fact as to willfulness" particularly where a consumer reporting agency's procedures result in removal of other inaccurate information).

### 2.  Plaintiffs' Defamation Claim

The final issue is whether the FCRA preempts Plaintiffs' defamation claim and, relatedly, whether Plaintiffs have set forth sufficient evidence for a jury to rule in their favor on such a claim.  "[N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e). Since the FCRA itself does not define malice, some courts interpreting section 1681h(e) have applied the common-law standard of malice.  *See, e.g., Joiner v. Revco Discount Drug Ctrs.*, 467 F. Supp. 2d 508, 514 (W.D.N.C. 2006).  Other courts use the *New York*

*Times v. Sullivan*, 376 U.S. 254 (1964), malice standard as an example of the malice necessary to overcome section 1681h(e)'s bar on defamation claims.  *See, e.g., Morriss v. Equifax Info. Servs., LLC*, 457 F.3d 460, 471 (5th Cir. 2006).  The gist of either standard, however, is that Plaintiffs must show that the credit reporting agency "published false statements about [Plaintiffs] knowing the statements were false or with a reckless disregard of whether they were false."  *Id.*  In the court's opinion, and for many of the reasons discussed with respect to their claim for punitive damages, Plaintiffs have failed to proffer sufficient evidence in support of this claim so as to withstand summary judgment in Experian's favor.  *Valvo*, 2005 WL 3618272, at *8 (holding state law claim was barred by section 1681h(e) of the FCRA when court concluded the plaintiffs failed to show the consumer reporting agency acted willfully under section 1681n).

## IV. CONCLUSION

For the reasons stated, the court recommends that Defendant's motion for summary judgment be ALLOWED and Plaintiffs' motion be DENIED.[5]

---

[5] The parties are advised that under the provisions of FED. R. CIV. P. 72(b) or FED. R. CRIM. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy

DATED: January 24, 2014


                                              /s/   Kenneth P. Neiman
                                              KENNETH P. NEIMAN
                                              U.S. Magistrate Judge

thereof.